Knights
*v.*
Putnam.

## The Inhabitants of BUCKLAND *versus* The Inhabitants of CHARLEMONT.

173

Exceptions to the instructions of the Court of Common Pleas to the jury may be alleged for the first time, after the verdict is returned.[1] *Semble.*
One who becomes *non compos mentis* after having come of age, does not follow the settlement of his father.
Incipient insanity does not incapacitate one for gaining a settlement.

THIS was an action of *assumpsit*, brought originally before a justice of the peace, to recover expenses incurred in the support of Miriam Pierce, a pauper, whose settlement was alleged by the plaintiffs to be in Charlemont.

At the trial before the Court of Common Pleas, it was admitted, that Josiah Pierce, the pauper's father, had his settlement in Charlemont on the 16th of May, 1813, at which time the pauper became twenty-one years of age ; that she had always resided with and constituted a part of her father's family ; that the father removed to Buckland more than six years ago, where he had since gained a settlement. The defendants contended, that the pauper, at the time when she became of age, was in a state of mental derangement and had so continued ever since, and that her settlement must therefore follow the settlement of her father.

It was admitted that the pauper was in a deranged state of

---

[1] Under the Revised Statutes, exceptions to the instructions of the Court of Common Pleas, must be presented to the court before the adjournment thereof without day. Revised Stat. *c.* 82, § 12.

Buckland
v.
Charlemont.

mind in September 1813, and the question was, whether she was so at the time when she came of age. There was much evidence on both sides in relation to her conduct and appearance at that time.

The counsel for the defendants contended that this was not a case of lunacy, but of general mania, which had increased steadily, and without intermission, into a state of furious madness, and that the pauper was a proper subject of guardianship from the time when the first decisive symptoms of her malady appeared ; and that the same circumstances and appearances attending her before she became of age, as had attended her since she had been in a state of acknowledged mental derangement, was evidence that she was at that period subject to the same malady.

But *Howe* J. instructed the jury, that they should first inquire whether some singularities of conduct testified of, were natural to her, or were the commencement of her derangement ; that it was proper for them to take into consideration her subsequent madness, so far as it tended to throw any light upon this previous conduct : but that if it was doubtful whether these acts were the inception of disease or mere peculiarities of natural character, their verdict must be for the plaintiffs. He also instructed them, that if they were satisfied that these singularities were the commencement of the pauper's insanity, they would then inquire how far her mind had become affected by it at the time of her coming of age ; that there must have been such an alienation of intellect as would make it the duty of the judge of probate, upon a representation of the facts, to appoint her a guardian ; that to justify this, her mind must have so far lost its balance as to render her incapable of making a valid contract ; that her alienation of intellect must have been such as would justify commissioners of lunacy in England in finding her insane from May 16th, 1813.

The jury found a verdict for the plaintiffs. After the verdict was returned, the counsel for the defendants excepted to the foregoing instructions, and the judge allowed the exceptions ; although it was contended on the other side, that the defendants had lost their right to except, by acquiescing in the instructions until the verdict was returned.

*E  H. Mills,* now insisted that the exceptions came too ate.  The statute of 1820, *c.* 79, § 5, says, that it shall be lawful for a party thinking himself aggrieved by any direction of the Court of Common Pleas, in any matter of law, " to allege exceptions to the same, which exceptions being reduced to writing, in a summary mode, and being presented to the court, before the adjournment thereof, &c., shall be allowed." This means, that the exceptions shall be *alleged* at the trial or before the verdict, and be *reduced to writing* before the adjournment of the court.  [*Wilde* J. The constant practice has been otherwise.  How do you limit the time for alleging the exceptions ?]  The statute did not intend to allow a party to wait till the verdict should be returned.  [*Parker* C. J. It would be inconvenient if a party must constantly interrupt the judge, or if the jury must be called back.]  That has been done.  [*Parker* C. J. But if done frequently it would occa sion much embarrassment.]  It has been decided that after a witness has testified, it is too late to object to his testimony. The exceptions should be taken orally before the verdict, in order that the judge may have an opportunity to explain himself, and that there may be a fair trial.  Otherwise, a party will take his chance for a verdict, and when it is found against him, he will look about to see whether he may not obtain a new trial, because the judge has stated some wrong general principle or has omitted to charge in matter of law.  The rule we contend for is the rule of the common law and accords with decis'ons in other States. *Jones* v. *Ins. Co. of N. America,* 4 Dall. 249 ; *S. C.* 1 Binn. 38 ; *Lanuse* v. *Barker,* 10 Johns. R. 312.[1]  [*Wilde* J. The common law is different from our statute, and for twenty years it has been the practice to allege exceptions after the verdict, and sometimes it has been done on the last day of the term.  Where a judge has omitted to charge on any particular point, it has been decided that he should have been requested to charge on such point ;[2] but I never heard the present objection raised.  *Putnam* J. If the

Buckland
*v.*
Charlemont.
*Sept. 27th.*

175

---

[1] See also *Clemson* v. *Kruper,* 1 Breese, 162; *Johnson* v. *Ackless,* 1 Breese, 60.

[2] It is the duty of the judge, whenever requested, to charge the jury on every point pertinent to the issue. *Lapish* v. *Wells,* 6 Greenl R. 175.

Buckland
v.
Charlemont.

point is raised in the argument at the trial, I think it is suf-ficient. If it is not suggested then, I think it is too late, after the verdict, to suggest it for the first time.]

*Allen*, *contrà*, cited *Church* v. *Hubbart*, 2 Cranch, 239, note.

The *Chief Justice* intimated, that in his opinion the excep-tions were taken in season, and the objection was not further insisted on.[3]

*Allen* and *Maxwell*, in support of the exceptions. We have *no scale to measure the degrees of insanity*. As soon as the principles of association in the human mind are observed to be deranged, we can make no calculation upon its operations. The subsequent madness of the pauper showed decisively that the singularities in her conduct before she became of age were the commencement of her malady ; just as in the smallpox the breaking out fixes the character of the symptoms. If these positions are correct, the pauper was incapable of making a contract, and a proper subject of guardianship, from the time that she showed symptoms of mental derangement ; and the rules laid down by the judge in relation to a commission of lunacy and the power to make a valid contract, tended to mis-lead the jury.

*Wells*, for the plaintiffs, insisted that the instructions to the jury were correct ; and he distinguished this case from *Upton* v. *Northbridge*, 15 Mass. R. 237, where the settlement of an idiot *a nativitate* was held to follow that of his father, inasmuch as in the present instance there was a time when the pauper had a capacity to acquire a settlement for herself.

*Sept. 30th.*    PARKER C. J. delivered the opinion of the Court, to the following effect. The question is, whether the pauper, by virtue of her father's removal, gained a settlement in Buckland. This depends upon the question, whether she was of sound mind when she became of age. If she was, her settlement did not follow that of her father.[1]

---

[3] See Howe's Pract. 455, 458; *Train* v. *Collins*, 2 Pick. (2nd ed.) 154, n. 1. It is said in *Ex parte Bradstreet*, 4 Peters's Sup. Ct. R. 102, that a bill of exceptions should be tendered at the trial.

[1] But an idiot or person *non compos*, is capable of gaining a settlement by any one of the modes pointed out not requiring any act of volition of his own

It was contended, that if the singularities of conduct in the pauper were incipient madness, they were complete madness, which incapacitated her from making a contract ; and her case has been likened to the smallpox, where the subsequent breaking out proves the symptoms to have been that disease.  Perhaps this is not illogical ; but the question seems rather to be, whether different degrees of the same disease are attended with the same consequences.   Thus suppose it were made a question, whether a disease of which a person had symptoms, were contagious, and the person in a fortnight should break out ; it might be clear that the symptoms were the smallpox, but not that the disease was at that time contagious.   So here, incipient madness could not incapacitate the pauper from transacting business, and we think the reasoning of the judge very fair ; otherwise it should seem to follow, that all the acts of a person who has symptoms of alienation of mind, and after a course of years becomes insane, may be avoided.   The fact to be ascertained was, not whether there was absolute madness, but whether there was such a degree of mental derangement as to incapacitate the pauper for gaining a settlement for herself.   It is true we cannot measure the degree exactly, but we can come near enough for practical purposes ; as in cases of insanity of testators.   We do not think the allusion to a commission of lunacy material ; it was used as an illustration merely, and was so understood by the jury.[1]

*Judgment affirmed.*